

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. KINDER,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>ASSOCIATES HOUSING FINANCE, LLC, THE ASSOCIATES, ASSOCIATES FIRST CAPITAL INCORPORATED, ASSOCIATES HOME EQUITY, ASSOCIATES FINANCIAL SERVICES, ASSOCIATES FINANCIAL SERVICES, INC, and DOES 1 through 1,000, inclusive,<br><br>　　　　　　　　Defendants. | CASE NO. 99-CV-2411-J (NLS)<br><br>MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION |

This matter comes before the Court on Defendants' Motion for Summary Judgment, or in the alternative, Motion for Summary Adjudication of Claims.[1] The Court decides the matter on the papers submitted and without oral argument pursuant to Local Civil Rule 7.1(d)(1). Because Defendants' did not use an automatic telephone dialing system as defined by the Telephone Consumer Protection Act and thus, there are no disputed genuine issues

---

[1] Defendants include Associates Housing Finance, LLC, Associates First Capital Corporation, Associates Home Equity Services, Inc., and Associates Financial Services Company, Inc. The Court will refer collectively to them as "Defendants" or "Associates".

 - 1 -  99 CV 2411 J (NLS)

of material fact, the Court **GRANTS** Defendants' Motion.

## BACKGROUND

Plaintiff, James Kinder, purchased a pager with voicemail service from PageNet in September 1996. (Defs.' Undisputed Material Fact ("UMF") No. 1.) Plaintiff's pager was to be used for communication between himself and his customers of Rainbow Rent-A-Car, Rainbow Towing, Rainbow Auto Repair and Rainbow Carpet Cleaning. (Id. at No. 10.) In an effort to facilitate the success of his business, Plaintiff specifically requested and paid for the pager number (619) 999-9999 so that his customers would have an easy number to remember. (Pl.'s Dep. at 38:2-14.) Plaintiff received 184 calls, which were not intended for him, within the first twenty hours of having the pager number even though he had not advertised the number. (Defs.' UMF No. 2.) It seems that many companies use the number 999-9999 as a default number in their computer records for new customers without a phone number or for existing customers whose recorded number has become defunct. (Defs.' P. & A. at 1.)

Defendants are a group of interrelated consumer debts collection businesses who employ collection specialists to recover customers' delinquent accounts. These employees work with a computer that selects customers with past due accounts, calls them at the number recorded in their account then switches the call to a live person, who either speaks with the customer or plays a prerecorded message. (Def.'s UMF No. 16.) If the computer dials a disconnected number or a number that no longer reaches Defendants' customer, a new number must be entered into the account to avoid having the wrong number dialed again. (Id. at No. 18.) At the times relevant to this matter, when a customer's new number could not be determined the specialist entered a default number of 999-9999. (Def.'s P. & A. at 1.) Unfortunately, the computer is not programmed to identify this number as a place holder and reads it as a customer's number, which results in the number being repeatedly dialed in an attempt to collect on delinquent accounts.

Because Defendants' computers do not recognize 999-9999 as a default number, Plaintiff has frequently and erroneously been contacted on his pager by Defendants' collection business. Plaintiff's message simply states " Please leave a message after the tone" and thus, Defendants did not know that each time their computers contacted the (619) 999-9999 number they were actually reaching Plaintiff's pager. (Def.'s UMF No. 28 & 20.) Consequently, a large number of messages were left on Plaintiff's pager voicemail. Plaintiff's pager is only capable of storing 25 voicemail messages and thus, he spent a considerable amount of time each day scrolling through messages to determine which were legitimate business messages and which were erroneous debt collection messages. (Pl.'s P. & A. at 2.) Plaintiff immediately contacted PageNet and negotiated the waiver of charges for excess calls to his pager as Defendants' and other debt collectors' mistaken calls resulted in him receiving more than the 400 calls allowed under his monthly service plan. (Pl.'s Dep. at 63: 20-28.)

More than two years after this nuisance began, Plaintiff finally contacted Defendants in April 1999 to notify them of the problem. (Pl.'s Disputed Material Fact ("DMF") No. 4.) Defendants promptly placed a filter on its dialing equipment that was designed to block calls to not only Plaintiff's 999-9999 number but all numbers containing the same seven numbers. (Def.'s UMF No. 5.) However, Plaintiff allegedly continues to receive calls from Defendants and similar types of calls from over a 100 other companies. (Pl.'s DMF No. 5.)

## DISCUSSION

### I. Jurisdiction

The Court maintains subject matter jurisdiction over this matter despite the fact that the Ninth Circuit has concluded that there is no federal jurisdiction over private actions under the Telephone Consumer Protection Act of 1991 ("TCPA" or "the Act").

1 See Murphey v. Lanier, 204 F.3d 911, 913 (9th Cir. 2000).[2] Jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent changes. See Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, 159 F.3d 1209, 1213 (9th Cir. 1998). Although Plaintiff has voluntarily dismissed all his federal claims leaving only his claim for willful violation of the TCPA, the claim may remain in federal court as subject matter jurisdiction existed at the time of removal.

## II.     Legal Standard

Accordingly, the Court shall grant summary judgment if the evidence shows that there are no genuine issues of material fact and Defendants, as the moving parties are entitled to a judgment as a matter of law. See FED. R. CIV. P. 56(c). Upon a showing that there are no genuine issues of material fact as to a specific claim, the Court may grant summary judgment in the party's favor "upon all or any part thereof." See Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc., 860 F. Supp. 1448, 1450 (C.D. Cal. 1993); see also FED R. CIV. P. 56(a), (b). To determine summary judgment, the Court must review the evidence in the light most favorable to Plaintiff, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 255, 106 S. Ct. 2505 (1986).

A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. T.W. Elec. Serv. v. Pacific Elec. Contractors, 809 F.2d 626 (9th Cir. 1997). Whether a "genuine" issue can be said to exist with respect to a material fact is often a close question. Id. Plaintiff, as the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." See Id., citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The issue of material fact is not required to be resolved conclusively in favor of the party asserting its existence; rather all that is required is that

---

[2] The Ninth Circuit found that "because federal court jurisdiction is limited to that conferred by Congress, the express reference to state court jurisdiction does not mean that federal jurisdiction also exists; instead, the failure to provide for federal jurisdiction indicates that there is none." Id.

sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. See Id.

### III.   Statutory Text

When interpreting a statute, the Court is to look first to the words that Congress used." See Sanchez v. Pacific Powder Co., 147 F.3d 1097, 1099 (9th Cir. 1998). The Ninth Circuit has also held that rather than focusing just on the word or phrase at issue, the Court should look to the entire statute to determine Congressional intent. See Id. (citation omitted)  If the wording of the statute unambiguously illustrates Congressional intent, the Court need look no further. See Sloan v. West, 140 F.3d 1255, 1261 (9th Cir. 1998).

### IV.   Analysis

In order for the Court to decide this motion for summary judgment it must decide if there are genuine disputes of material fact as they may relate to the following three questions:  (1) Does the TCPA apply to this case's set of facts? If yes, (2) did Defendants violate the Act when, using their predictive dialer system, they unintentionally made calls intended for their customers to Plaintiff's pager?  And finally, (3) if Defendants did violate the Act, how much is Plaintiff entitled to in damages.

#### A.   Applicability of the TCPA

The TCPA was passed in response to numerous consumer complaints to Congress, the Federal Communications Commission ("FCC") and state regulatory authorities that the use of automated telephone equipment to engage in telemarketing was creating a nuisance and invasion of privacy. S. Rep. 102-178, 1991 WL 211220 at *1-2. Accordingly, there is no doubt that the Act was intended to apply to telemarketers. However, the question in this case is whether the use of automated telephone equipment by others was also intended to be restricted by the Act.  The Court concludes that it was.

The plain language of the statute makes no explicit reference to the exclusion of

debt collectors. However, section 227(b)(2)(A) indicates that Congress intended to give the FCC the authority to determine whether or not businesses, such as debt collectors, who place commercial calls that do not include the transmission of unsolicited advertisements, should be protected by the provisions of the Act. 47 U.S.C. § 227(b)(2)(A)-(B). The regulations implemented by the FCC demonstrate that calls made to residential telephone lines for purposes other than solicitation or advertisements are not prohibited by the Act. See 47 CFR § 64.1200(c)(2). Thus, both the statutory and regulatory language indicate that certain calls made by companies for purposes of debt collection are not prohibited under the Act. Still, these provisions apply only to section (b)(1)(B), which relates to the use of artificial or prerecorded voice messages to residential phone lines, which is not at issue here. Accordingly, the Court must determine whether the relevant portions of the Act to apply to Defendants.

**B.    Violation of the TCPA**

    **1.    Does Defendants' Predictive Dialer Fall Within the Definition of the Act?**

In opposing Defendants' Motion, Plaintiff argues that there is a factual dispute as to whether or not the predictive dialer equipment used by Defendants is an automatic telephone dialing system as defined by the Act. An automatic telephone dialing system is equipment that has the capacity to store or produce telephone numbers, and uses a random or sequential number generator to dial such numbers. 47 U.S.C. § 227(a)(1)(A)-(B). Defendants argue that their predictive dialer does not meet the definition because it is designed to contact only Associates' customers. (Defs.' UMF Nos. 14 & 15.) They contend that they use their system to dial only their customers' numbers, (Defs.' UMF No. 15.) and they do not use the dialer to call numbers in a random or sequential manner. Rather, they a select a customer to be called and then use the aid of the computer to dial the customer's number. (Tarantino Decl. ¶ 6.)

Plaintiff maintains whether Defendants' system actually stores or produces telephone numbers to be called using a random or sequential number generator is irrelevant. (Pl.'s Disputed Material Fact ("DMF") #13.) Plaintiff also argues that the

issue is "not how defendants are using their equipment, but whether the equipment has the capacity to store and produce numbers randomly or sequentially and to dial the numbers. (Pl.'s P. & A. at 7.) The Court disagrees. If the parties were disputing the design of Defendant's dialing system (e.g. whether the equipment was designed and used to select telephone numbers or customers), that would be a principal question of fact for the jury to decide. However, as Plaintiff points out, there is no such dispute and thus, this issue of whether Defendant's telephone dialing equipment falls within the statutory definition is a question of law for this Court to decide.

As the parties and other sources have pointed out there are essentially two types of automatic telephone dialing computer devices currently in use. The automatic dialing announcing device automatically dials a telephone number and plays a prerecorded or synthesized message if a person answers the telephone. See Lysaght v. State of New Jersey, 837 F. Supp. 646, 647 (D.N.J. 1993). On the other hand, the predictive dialer also automatically dials a telephone number but has the ability to transfer the call to a live person once the phone is answered. Id. It is the latter device that is at issue in this case. Plaintiff has failed to point to any evidence in the record that indicates that the dialer system used by Defendants has the capacity to, or actually does randomly or sequentially dial the telephone numbers stored within it. In fact, the only evidence presented in the record is to the contrary. (See Tarantino Decl. ¶¶ 6-7.[3]) Consequently, the Court finds there is no factual dispute that Defendants' predictive dialer is not an automatic telephone dialing system as defined by section 227(a)(1)(A)-(B).

Given that the defendants did not use an automatic telephone dialer to place their calls to Plaintiff, there was no violation of the Act. Because there are no genuine issues of material fact that must be submitted to the jury, the Court **GRANTS** Defendants'

---

[3] Plaintiff objects to the Court's consideration of this evidence on the basis the that Mr. Tarantino has not been designated as an expert. (Plf.'s Obj. To Evidence at 1.) However, Mr. Tarantino is not offering expert opinion testimony but rather submits his declaration based on his personal knowledge of Defendants' use of the equipment. Admittedly, as a non-expert, it is not for Mr. Tarantino to opine whether or not Defendants' equipment meets the statutory definition of an automatic telephone dialing system (Tarantino Decl. ¶ 5) but that the Court does not consider that statement when reaching its decision.

Motion for Summary Judgment, or in the alternative, Motion for Summary Adjudication.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED**. The Court Clerk is directed to close this file.

**IT IS SO ORDERED.**

DATED: Sept. 24, ecd

NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties