Chad Austin, Esq. SBN 235457
4632 Berwick Drive
San Diego, CA 92117
Telephone: (619) 992-7100
Facsimile: (619) 295-1401

Attorney for Plaintiff, JAMES M. KINDER, an individual

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| JAMES M. KINDER,<br><br>                    Plaintiff,<br><br>v.<br><br>HARRAH'S ENTERTAINMENT, Inc. and<br>DOES 1 through 100, inclusive,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Lead Case No. 07 CV 2132 DMS (AJB)
[Consolidated with 07CV2226 DMS (AJB)]

Judge:        Hon. Dana M. Sabraw
Magistrate:   Hon. Anthony J. Battaglia

**PLAINTIFF JAMES M. KINDER'S
OPPOSITION TO DEFENDANT'S
MOTION TO DECLARE HIM A
VEXATIOUS LITIGANT AND TO
REQUIRE HIM TO POST A BOND**

Date:         April 25, 2008
Time:         1:30 p.m.
Courtroom:    10

## I. INTRODUCTION

20

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE

21

TAKE NOTICE THAT Plaintiff JAMES M. KINDER hereby opposes Defendant HARRAH'S

22

ENTERTAINMENT, Inc.'s motion to declare him a vexatious litigant and to require him to post

23
24

a bond, for the reasons set forth below.

25

/ / /

26
27
28

1

## II. ARGUMENT

**A.    DEFENDANT HAS SATISFIED NONE OF THE STATUTORY REQUIREMENTS IN REQUESTING SECURITY UNDER CCP § 391 et seq.**

In order to request security under CCP § 391 et seq., Defendant must establish that 1) Plaintiff is a vexatious litigant and 2) that there is no reasonable probability that he will prevail in this case against Defendant.  CCP § 391.1.

Here, Defendant has offered no argument whatsoever that Plaintiff's claims have no merit or that there is no reasonable probability that he will prevail in this litigation.  Defendant simply concludes that because many other TCPA violators have illegally called Plaintiff and that Plaintiff has sought redress in the *State* court system for those violations of law, Plaintiff is somehow deprived of the protections of the TCPA.  Defendant does so by playing fast and loose with federal case law regarding vexatious litigants, which will be discussed in detail below.  However, the statutory scheme in California is quite clear as regards a motion for security under CCP § 391.1.  First, Defendant must prove that Plaintiff is a vexatious litigant by satisfying either CCP § 391(b)(1), (b)(2), (b)(3) or (b)(4).  This, Defendant clearly has not done.

Defendant offers no evidence that Plaintiff "(1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing."  CCP § 391(b)(1).

2

1    Defendant offers no evidence that Plaintiff "(2) After a litigation has been finally

2    determined against the person, repeatedly relitigates or attempts to relitigate, in propria

3    persona, either (i) the validity of the determination against the same defendant or defendants as to

4    whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any

5    of the issues of fact or law, determined or concluded by the final determination against the same

6    defendant or defendants as to whom the litigation was finally determined." CCP § 391(b)(2).

7

8    Defendant offers no evidence that Plaintiff "(3) In any litigation while acting in propria

9    persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary

10   discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary

11   delay." CCP § 391(b)(3).

12

13   Defendant offers no evidence that Plaintiff "(4) Has previously been declared to be a

14   vexatious litigant by any state or federal court of record in any action or proceeding based

15   **upon the same or substantially similar facts, transaction, or occurrence**." CCP § 391(b)(4).

16   [Emphasis added.]

17

18   Rather, Defendant simply attaches inadmissible evidence in the form of a list of names

19   from the Judicial Council, hoping to sidestep its obligations under the applicable statutes.

20   Because Defendant made no showing that Plaintiff is a vexatious litigant under CCP § 391(b)

21   and Defendant did not even address the merits of Plaintiff's claims, as a matter of law it is not

22   entitled to security under CCP § 391.1.

3

**B.    NO ORDER WAS EVER ENTERED IN *KINDER V. OSI COLLECTIONS* FINDING THAT PLAINTIFF'S NUMBER FALLS OUTSIDE THE PROVISIONS OF THE TCPA.**

Defendant attaches as Exhibits 3, 4, and 6-14 to its Motion numerous identical October 7, 2003 rulings from San Diego Superior Court Judge John. S. Einhorn denying Plaintiff permission to file new litigation in several TCPA matters. These exhibits are hearsay and lacking in foundation. There are several other problems with them as well. The most glaring problem with these rulings is that they are based on factual inaccuracies which are readily apparent from even a cursory review of the court file in the case referenced therein [*Kinder v. OSI Collection Services, Inc.*; San Diego Superior Court Case No. GIC789588]. The court file in *Kinder v. OSI* clearly shows that no ruling was ever entered on OSI's Motion for Summary Judgment. The court file has absolutely no record whatsoever of any ruling such as was referenced by Judge Einhorn. *See* Declaration of attorney Christopher J. Reichman, attached hereto and incorporated herein by reference. Also attached hereto and incorporated herein by reference are Exhibits A, B, C, D and E, court documents from the file in that case, showing that *Kinder v. OSI Collection Services, Inc.* resolved and never went to final judgment.

The summary judgment motion filed by OSI in that case was taken off calendar by OSI's attorney on November 20, 2003 because the case settled, with OSI paying Plaintiff $10,000. A copy of the check is even in the court file. Attached hereto and incorporated herein by reference is Exhibit F, a copy of the $10,000 check, copied from the court file.

/ / /

/ / /

4

1   Even if the ruling relied upon by Judge Einhorn existed, which it did not and does not, it

2   would have been clear legal error for him to take judicial notice of any factual determination

3   made by the court in *Kinder v. OSI*. The October 7, 2003 rulings (which were all worded exactly

4   the same) stated that the court had taken "Judicial Notice" of the file in *Kinder v. OSI Collection*

5   *Services, Inc.* However, while the existence of a document in a court file may be judicially

6

7   noticed, the truth of matters asserted in such documents is not subject to judicial notice. *Sosinsky*

8   *v. Grant*, (1992) 6 Cal.App.4th 1548. "A court *cannot* take judicial notice of the truth of *hearsay*

9   statements just because they are part of a court record or file." *Bach v. McNelis* (1989) 207

10  Cal.App.3d 852, 865 [Emphasis in original.]. The court may take judicial notice of the existence

11

12  of other court records and files, but cannot accept findings of fact contained in those files as true.

13  *See* The Rutter Group, Civil Procedure Before Trial § 7:12-7:15.10.

14

15      Even if, for the sake of argument, all of the above were not true, the October 7, 2003

16  rulings relied upon by Defendant were not final judgments. They only *denied permission to file*

17  *new litigation*. Because the "pager" issue was not *actually litigated* and the October 7, 2003

18

19  rulings were not *final judgments* on the merits, they have no collateral estoppel effect

20  whatsoever. *Eugene Lumpkin, Jr. v. Frank M. Jordan*, (1996) 49 Cal.App.4th 1223, 1229.

21  Defendant is ostensibly aware of this fact, as well as the fact that there was no summary

22

23  judgment ruling in *Kinder v. OSI*, and has inundated the court with mounds of unavailing hearsay

24  documents in an attempt to prejudice the court against Plaintiff's claims. If the ruling alluded to

25  in Defendant's Exhibits 3, 4, and 6-14 did in fact exist, which Defendant claims it does and asks

26  this court to believe, why has Defendant not attached the ruling as an exhibit?

27

28

CASE NO. 07 CV 2132 DMS (AJB)

Defendant at no point in its motion argues that Plaintiff's claims against it do not have merit, impliedly conceding that they do have merit. Defendant is aware that it has violated the law without defense and believes that if it does a good enough smear job of Plaintiff, the court will make its decision based on attorney "spin" and not on the law. This is further buttressed by the fact that there exist binding FCC interpretations of the TCPA which hold that *any wireless number* is protected by 47 U.S.C. § 227(b)(1)(A)(iii).

**C. BECAUSE IT IS UNDISPUTED THAT PLAINTIFF'S NUMBER IS A WIRELESS NUMBER, BINDING FCC INTERPRETATIONS OF THE TCPA DICTATE THAT PLAINTIFF'S NUMBER IS PROTECTED BY THE TCPA.**

Plaintiff's number assigned to a paging service is a wireless telephone number. *See* Declaration of James M. Kinder, ¶ 2, filed concurrently herewith and incorporated herein by reference. This fact has never been disputed, by Defendant or any other entity. Therefore, any inquiry into whether or not Plaintiff's number is "assigned to a paging service" is totally irrelevant for determining Defendant's liability under 47 U.S.C. § 227(b)(1)(A)(iii). *See* FCC Report and Order 03-153, paragraph 165, wherein the Commission held "We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to **any wireless telephone number**." [Italics in original; Bolding added for emphasis]. This ruling was reaffirmed by the FCC in Declaratory Ruling 07-232, January 4, 2008 (CG Docket No. 02-278), wherein the FCC held that "the TCPA...prohibits [automated dialing technology] from dialing emergency numbers, health care facilities [and] **telephone numbers assigned to *wireless* services**" [Paragraph 14; Bolding and italics added for emphasis].

/ / /

6

The above-mentioned FCC rulings are binding on all courts in the United States because the FCC is the regulatory agency empowered by Congress to interpret the TCPA and enhance its effect through Orders, Rulings and Federal Regulations.  Pursuant to the United States Supreme Court's decision in _National Cable & Telecommunications Association et al. v. Brand X Internet Services et al._, 545 U.S. 967 (2005), the above FCC rulings must be given "Chevron deference" unless found to be "arbitrary and capricious."  As the Supreme Court held in _Brand X_, **"the agency remains the authoritative interpreter"** of the TCPA and as long as the implementing agency's [FCC's] construction of the TCPA is reasonable, **"Chevron requires a federal court to defer to an agency's construction [of the statute (TCPA)], even if it differs from what the court believes to be the best interpretation**" [Bolding added for emphasis].  Id. at 983 and 969, respectively.

Unless and until the FCC rules differently than they have consistently and repeatedly ruled thus far, any and every wireless number is protected by the TCPA.  Because Plaintiff's number is a wireless number, any autodialed, artificial or prerecorded voice call to same is a clear, indefensible and _strict liability_ violation of the TCPA.  Defendant's prerecorded voice calls to Plaintiff's wireless number assigned to a paging service therefore clearly violated the TCPA.  Moreover, Plaintiff's number is currently connected to a pager.  _See_ Declaration of James M. Kinder, ¶ 3.  And, finally, Defendant's position distorts the common sense of the law, for Defendant would have the Court believe that a number assigned to a cell phone somehow stops being assigned to a cell phone when the user turns his or her cell phone off at night to sleep.  Cutting of silly factual arguments such as this is likely why Congress and the FCC chose the

7

1   simple unambiguous language "number assigned to a paging service." 47 U.S.C. §

2   227(b)(1)(A)(iii).

3   **D.    PLAINTIFF'S NON–TCPA CAUSES OF ACTION ALSO DO NOT REQUIRE A**
       **FINDING THAT HIS NUMBER IS A NUMBER ASSIGNED TO A PAGING**
4       **SERVICE.**

5           As was established above, it is a matter of well settled law as held by the FCC that Plaintiff

6   need not prove that his number is a "number assigned to a paging service" in order to recover for

7
8   damages under the TCPA.  Additionally, Plaintiff's causes of action for violations of California Civil

9   Code §1770(a)(22)(A), California Business and Professions Code §17200 and trespass to chattel also

10  do not depend on a finding that his number is "assigned to paging service."  Nonetheless, Defendant

11
12  asks this Court to order Plaintiff to post a *$75,000* bond for its defense, in spite of the fact that it only

13  offers "evidence" that Plaintiff's TCPA action is somehow barred (which constitutes only ¼ of

14  Plaintiff's case).  Also, Defendant asks for this bond even though the exhibits (October 7, 2003

15  rulings by Judge Einhorn) attached to its motion are totally inaccurate, have since been invalidated

16
17  by the FCC, are hearsay, irrelevant and lacking in foundation.  Moreover, even if those rulings were

18  admissible evidence, which they are not, the conclusions reached therein have no collateral estoppel

19  effect whatsoever because they were based on judicial notice taken in clear legal error, were not *final*

20  *judgments* and were not the result of the "pager" issue being *actually litigated*.

21  **E.    PLAINTIFF WAS NOT AND IS NOT SUBJECT TO A PRE-FILING ORDER IN**
       **SAN DIEGO SUPERIOR COURT IF HE IS REPRESENTED BY COUNSEL.**
22

23          Defendant incorrectly asserts that this action was commenced in violation of a pre-filing

24  order that required Plaintiff to obtain leave of the Presiding Judge of the San Diego Superior

25  Court prior to commencing a new civil action in said court.  The pre-filing order to which
26

27                                                        8

28

Defendant refers did not apply as Plaintiff commenced this action while represented by counsel. Defense counsel's unsworn statement that "In 2003, as a result if his blatant pattern of vexatious litigation, the Superior Court precluded KINDER from filing any new litigation **based on the Telephone Consumer Protection Act**" is absolutely false and totally unsupported by any evidence or the text of the order [Page 1 of Defendant's Points and Authorities, Lines 16-18; Bolding added for emphasis]. The pre-filing order entered by Judge Strauss, *which Defendant has not offered into evidence*, made no mention whatsoever of the TCPA and Defendant has offered no evidence that that order had anything to do with Plaintiff's previous TCPA cases. Since Defendant provided no evidentiary support for its statement that "KINDER [is] precluded from filing any new litigation based on the Telephone Consumer Protection Act," Plaintiff can only assume that Defense counsel simply made this up, in a further attempt to prejudice the court.

Defense counsel's string of false, unsupported and unsworn statements continues on Page 2, Lines 20-21 wherein Defendant states "KINDER is a disbarred attorney who was convicted of a felony in the 1980s." As is shown by Defendant's own Exhibit 27, Plaintiff was not disbarred. He resigned from the bar. Apparently, defense counsel thought that the word "disbarred" had a little more zeal than the word "resigned," so she took the liberty of editorializing the public record, in a further attempt to prejudice the court. Defendant also offers no proof of any "felony conviction" of Plaintiff other than Defense counsel's unsworn statement.

Attached hereto and incorporated herein by reference is Exhibit G, a ruling from now federal District Judge Janis Sammartino, in which she found that Plaintiff's action in *Kinder v.*

9

1   *Adecco*, San Diego Superior Court Case No. GIC882000, was not commenced in violation of the

2   pre-filing order in that he was represented by counsel.

3

4   **This Court noted when it denied Defendant's previous Motion to Dismiss in this**

5   **case that Defendant had not provided any authority that an alleged violation of a *State***

6   **court pre-filing order has any legal effect in a *federal* court.  Defendant *again* offers no**

7   **authority that Plaintiff's alleged violation of a pre-filing order in State court has any legal**

8   **effect in this federal action.**  Nor has Defendant provided any authority standing for the

9

10  proposition that a federal plaintiff's previous litigation history in State court has any legal effect

11  on a subsequent federal litigation, which was *removed from State court*.  Defendant also offers no

12  authority which says that a federal plaintiff's previous State court litigation can be a proper basis

13  for a federal judge to find that the federal plaintiff is a vexatious litigant in federal court, when

14

15  that plaintiff has filed *none* of his cases at issue in federal court.

16

17

18      How can Defendant in good faith complain in this court about an internal San Diego

19  Superior Court issue when it voluntarily took this case out of the hands of the San Diego

20  Superior Court?  Defendant waived the right to litigate any of the State court issues raised in this

21  motion when it removed this case to federal court.  Even if Defendant had not waived these State

22

23  court issues, until Defendant establishes that they have *any* legal effect in this federal court, any

24  and all evidence it offers to support its position regarding these State court issues is irrelevant,

25  frivolous, improper and solely calculated to prejudice the court.

26  / / /

27                                          10

28                                          CASE NO. 07 CV 2132 DMS (AJB)

**F.    DEFENDANT'S FEDERAL CASES REGARDING VEXATIOUS LITIGANTS ARE CLEARLY DISTINGUISHABLE FROM THE FACTS OF THIS CASE.**

Defendant relies on two cases for its allegation that Plaintiff is a "vexatious litigant" in this court, _Molski v. Mandarin Touch Restaurant_, 347 F.Supp.2d 860 (C.D.Cal.2004) [Hereinafter "_Molski_."] and _Wilson v. Kayo Oil Company dba Circle K #5250_, 2007 WL 3203035 (S.D.Cal.) [Hereinafter "_Wilson_."].  A brief review of these cases reveals that the facts therein could hardly be more different from the case at bar.

The holdings in both _Molski_ and _Wilson_ depended on 2 factors present in both cases. First, it was obvious to the court that the plaintiffs in those cases lied about what happened to them in order to contrive standing under the Americans with Disabilities Act.  Second, the plaintiffs gerrymandered their lawsuits in such a way as to gain access to federal court, which they otherwise would not have had.  Neither of those factors is present in this case.

**_1.    Plaintiff Has Not Made False Accusations In Order To Contrive Standing._**

Defendant's reliance on _Wilson_ and _Molski_ is misplaced because the courts in those cases specifically found that the plaintiffs had lied in their allegations against the defendants.  The court in _Molski_ noted that "Most important, however, is the Court's conclusion that the allegations contained in Plaintiff's complaints are contrived and not credible." _Molski v. Mandarin Touch Restaurant_, 347 F.Supp.2d 860, at 865 (C.D.Cal.2004).  "The Court simply does not believe that Molski suffered 13 nearly identical injuries, generally to the same part of his body, in the course of performing the same activity, over a five-day period.  This is nothing to say of the hundreds of other lawsuits Molski has filed over the last 4 years, many of which make

11

nearly identical accusations." *Id* at 865. "Molski has plainly lied in his filings to this Court. His claims of being the innocent victim of hundreds of physical and emotional injuries over the last four years defy belief and common sense." *Id* at 867. The Court believes that Molski's ADA claims are a sham, used as a pretext to gain access to the federal courts, while he pursues remedies that are available-sometimes exclusively-under California state law." *Id.*

In *Wilson*, the court followed the reasoning of *Molski* because it also found that "Wilson's 'ADA claims are a sham, used as a pretext to gain access to the federal courts, while he pursues remedies that are available-sometimes exclusively-under California state law.'" *Wilson v. Kayo Oil Company dba Circle K #5250*, 2007 WL 3203035 at 6 (S.D.Cal.). "Wilson, nevertheless, fails to explain why he needs to travel such a long distance to buy a $.30 gum at Circle K/76." *Id* at 3.

The defendants in Plaintiff's TCPA cases have not alleged that Plaintiff is lying about the fact that they called him (although they dispute liability). That is because they know that they called Plaintiff. The defendants apparently believe that they are not responsible for complying with federal law. Rather, they posit that it is incumbent upon Plaintiff to "mitigate his damages," in spite of the fact that each violation of the TCPA is an independent tort, separately actionable. It is not Plaintiff's responsibility or obligation to affirmatively stop third parties from breaking the law. Every time someone calls a wireless telephone number with an automatic telephone dialing system, artificial or prerecorded message, it is an indefensible, *strict liability* violation of 47 U.S.C. § 227(b)(1)(A)(iii). Considering that Defendant has absolutely no defenses

12

1  whatsoever, its Motion to Dismiss and the instant motion could have been filed for no purpose

2  other than to harass Plaintiff, needlessly increase the cost of and delay this litigation.

3

4  Plaintiff can imagine no better examples of vexatious conduct than filing a frivolous 18

5  page Motion to Dismiss with almost 20 pages of exhibits [Docket No. 5], followed by a 12 page

6  Reply, 22 pages worth of objections and motions to strike and 59 pages of exhibits [Docket Nos.

7

8  14, 15] or filing 31 total pages of opposition to Plaintiff's Motion to Amend [Docket No. 18],

9  which was filed *prior to Defendant filing its answer*.  Defendants Harrah's Operating Company,

10  Inc., Harrah's Marketing Services Corporation, Harrah's Laughlin, Inc., HBR Realty Company,

11  Inc. and Harrah's License Company, LLC have also recently filed Motions to Dismiss that appear

12  to differ in no substantive way from the Motion to Dismiss filed by Harrah's Entertainment, Inc.,

13  which was denied January 22, 2008.  With nothing new to offer the court, what proper purpose

14

15  could these defendants possibly have for filing the same motion, with the same supporting

16  declaration?1

17

18  **2.    *Plaintiff Has Not Availed Himself Of The Federal Court System.***

19  Other than the fact that the plaintiffs in *Molski* and *Wilson* blatantly lied in their

20  allegations against the defendants, the next most important factor for the court in those cases was

21  that the plaintiffs falsely manipulated their lawsuits to have standing to sue in federal court. "The

22  Court is also troubled by the fact that Molski raises a federal ADA claim in the federal courts,

23  while seeking a remedy, money damages, exclusively available under state law…the ADA claims

24

25  do not extend Molski any benefit in terms of the litigation itself, or the remedies he may seek,

26  _____

27  1 Those Defendants are represented by the same attorneys who represent Harrah's Entertainment, Inc.

13

28

1   other than allowing him to proceed in the federal courts. For that reason, the Court believes that

2   Molski's ADA claims are a sham, used as a pretext to gain access to the federal courts." *Molski*

3   *v. Mandarin Touch Restaurant*, 347 F.Supp.2d 860, at 867 (C.D.Cal.2004).

4

5       "The Court finds that Wilson's 'ADA claims are a sham, used as a pretext to gain access

6

7   to the federal courts, while he pursues remedies that are available-sometimes exclusively-under

8   California state law.'" *Wilson v. Kayo Oil Company dba Circle K #5250*, 2007 WL 3203035 at 6

9   (S.D.Cal.). The plaintiff in *Wilson*, as did the plaintiff in *Molski*, brought his complaint "contrary

10  to the existing law on federal jurisdiction" and the case was therefore dismissed for lack of

11

12  subject matter jurisdiction. *Id* at 7.

13

14      As conceded by Defendant, each of Plaintiff's 7 [formerly 9] TCPA matters currently in

15  this court was removed there by the respective defendant. In fact, at least 2 of the 9 cases were

16  removed frivolously based on federal question jurisdiction, in that there is no federal question

17

18  subject matter jurisdiction over TCPA claims. *See Murphy v. Lanier*, 997 F.Supp. 1348, 1349

19  (S.D. Cal. 1998), *aff'd* 204 F.3d 911 (9th Cir. 2000). On March 4, 2008, District Judge Irma E.

20  Gonzalez granted Plaintiff's motion to remand in *Kinder v. Cavalry Investments, LLC* 07 CV

21  2274 IEG (WMC). Plaintiff has also filed a motion to remand in *Kinder v. Astra Business*

22

23  *Services, Inc.* 07 CV 2091 DMS (AJB). That motion is set to be heard on April 25, 2008 and

24  Plaintiff fully expects that it will be granted, reducing the number of his TCPA cases in federal

25  court to 6.

26  / / /

27                                      14

28

1    It is quite a stretch for Defendant to request that this court deem Plaintiff a vexatious

2  litigant, considering that he has filed none of his TCPA cases here and has no intention of doing

3  so in the future.  If it were not for this Defendant and all of the other defendants removing his

4  cases here, this court would have none of those cases to begin with.  Additionally, if none of the

5  defendants in these cases had called Plaintiff of their own volition and in violation of existing

6  law, Plaintiff would never have filed a single TCPA lawsuit.

7

8

9    It is true that Plaintiff has filed a number of lawsuits under the TCPA, some against fax

10  blasters, some against unlawful telemarketers (like Defendant) and some against collection

11  agencies, all of whom have *contacted him* in violation of the TCPA.  However, Defendant

12  desperately wants this court to ignore that fact.  To advance its witch hunt, Defendant has

13  accused Plaintiff of being "vexatious" because the complaints he has filed in the current TCPA

14  matters are similar.  With all of the TCPA defendants having violated the exact same laws, why

15  should Plaintiff's complaints not be similar?  The defendants in all of Plaintiff's TCPA cases

16  contacted him, not the other way around.  All that these defendants had to do to avoid being sued

17  was not violate the TCPA to begin with.

18

19

20

21    Finally, for the cost of only $690, Defendant could have purchased a Telcordia ® number

22  suppression program which would have completely blocked Defendant from calling all numbers

23  assigned to a paging service, as well as all other numbers proscribed by the TCPA (including

24  hospital emergency rooms).  *See* Dec. of Chad Austin; Ex.'s H and I.

25

26  / / /

27                                    15

28

1    Defendant's failure to employ this commonly known and inexpensive tool constitutes an

2    irresponsible business practice.  When any company decides to cut corners/costs by using

3    computer operated autodialer technology, it does so at its own risk.  Defendant made a business

4    decision to use automated telephone equipment, instead of the more expensive (and legal)

5    method of hand-dialing a telephone number.  When Defendant made this decision, it became

6    responsible for any and all legal consequences flowing from its business activities related thereto.

7    

8    When a company engages in a particular activity, it is chargeable with knowledge of the laws

9    relating to that activity and is solely responsible for its conduct when that conduct violates

10    existing law.

11    

12    

13    The TCPA is clearly designed to put the burden of using automated telephone equipment

14    on the user and to eliminate their use of tort concepts as defenses.  _See_, e.g., 47 U.S.C. §

15    227(b)(3) [providing for statutory damages for an offense that under tort law would be dismissed

16    as _de minimus_ and allowing for treble damages if the violation was "willful," specifically

17    contemplating that inadvertent or accidental violations are actionable].

18    

19    

20    Plaintiff asks the court to consider the following hypothetical example, which illustrates

21    Plaintiff's point: Plaintiff A, by some stroke of pure coincidence, is involved in 30 to 40 motor

22    vehicle accidents a day, none of which are his fault.  Some of the defendants in those accidents

23    strike Plaintiff A intentionally (telemarketers and fax blasters) and some by mere negligence

24    (collection agencies).  If Plaintiff A sued all of those motorists who struck him (called his

25    telephone number), would that make him a "vexatious litigant?"  Of course it would not.  Would

26    

27    16

28    CASE NO. 07 CV 2132 DMS (AJB)

his cases have more merit if less people hit his car (called his telephone number)?  Of course they would not.  Would Plaintiff A's claims be more "noble" if he only sued a small portion of the people who struck him (called his telephone number)?  Of course they would not.

Plaintiff has every right to own his telephone number and Defendant had no right to call it.  It is absurd for Defendant to blame Plaintiff for filing valid lawsuits against companies who broke the law, when all that those defendants had to do to avoid being sued was not illegally call Plaintiff in the first place, especially when they had a variety of free and/or inexpensive tools available to them which would have stopped them from making any calls in violation of the TCPA.

## III. CONCLUSION

Defendant has made no showing whatsoever that Plaintiff's claims against it are anything but meritorious.  Defendant has blatantly failed to comply with the statutory requirements for requesting security under CCP § 391.1.  Defendant has cited federal cases with fact patterns in no way similar to the case at bar.  In fact, all that Defendant has done, which is consistent with every pleading it has filed thus far, is inundated the court with false and frivolous accusations, inadmissible evidence and diatribes.

Defendant believes that if it pounds hard enough on the table, the court will lose focus on the real issues of this case and require Plaintiff to post a bond to which Defendant is not entitled.  Plaintiff has not availed himself of this court and it would therefore be fundamentally unfair for this court to find Plaintiff to be a vexatious litigant, especially given that his claims are entirely

17

1  meritorious.  For these reasons, as well as all of the other reasons stated above, Plaintiff

2  respectfully requests that the court deny Defendant's motion in its entirety.

3  DATED: April 11, 2008

4                                      By: /s/ Chad Austin_____

5                                         CHAD AUSTIN, Esq., Attorney for

6                                         Plaintiff, JAMES M. KINDER
                                       Email: chadaustin@cox.net

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 07 CV 2132 DMS (AJB)

1

# **TABLE OF CONTENTS**

2                                                                                                    **Page**

3   I.    INTRODUCTION...................................................................................1

4   II.   ARGUMENT.......................................................................................2

5
    A.    DEFENDANT HAS SATISFIED NONE OF THE STATUTORY
6         REQUIREMENTS IN REQUESTING SECURITY UNDER CCP § 391 et seq...2

7   B.    NO ORDER WAS EVER ENTERED IN *KINDER V. OSI COLLECTIONS*
8         FINDING THAT PLAINTIFF'S NUMBER FALLS OUTSIDE THE
          PROVISIONS OF THE TCPA...............................................................4
9

10  C.    BECAUSE IT IS UNDISPUTED THAT PLAINTIFF'S NUMBER IS A
          WIRELESS NUMBER, BINDING FCC INTERPRETATIONS OF THE
11        TCPA DICTATE THAT PLAINTIFF'S NUMBER IS PROTECTED BY
          THE TCPA......................................................................................6
12

13  D.    PLAINTIFF'S NON–TCPA CAUSES OF ACTION ALSO DO NOT
          REQUIRE A FINDING THAT HIS NUMBER IS A NUMBER ASSIGNED
14        TO A PAGING SERVICE...................................................................8

15  E.    PLAINTIFF WAS NOT AND IS NOT SUBJECT TO A PRE-FILING
16        ORDER IN SAN DIEGO SUPERIOR COURT IF HE IS REPRESENTED
          BY COUNSEL...................................................................................8
17

18  F.    DEFENDANT'S FEDERAL CASES REGARDING VEXATIOUS
          LITIGANTS ARE CLEARLY DISTINGUISHABLE FROM THE FACTS
19        OF THIS CASE.................................................................................11

20        1.    Plaintiff Has Not Made False Accusations In Order To Contrive
                 Standing...............................................................................11
21

22        2.    Plaintiff Has Not Availed Himself Of The Federal Court System..........13

23  III. CONCLUSION.................................................................................17

24

25

26

27                                          19

28

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
**State Cases:**

4
*Bach v. McNelis*

5
    (1989) 207 Cal.App.3d 852………………………………………...…………………..5

6
*Eugene Lumpkin, Jr. v. Frank M. Jordan*

7
    (1996) 49 Cal.App.4th 1223…………………………………………………..……...5

8
*Sosinsky v. Grant*

9
    (1992) 6 Cal.App.4th 1548………………………………...………………………5

10
**Federal Cases:**

11
*Molski v. Mandarin Touch Restaurant*

12
    347 F.Supp.2d 860 (C.D.Cal.2004)………………………………………11, 12, 13, 14

13
*Murphy v. Lanier*

14
    997 F.Supp. 1348 (S.D. Cal. 1998), *aff'd* 204 F.3d 911 (9th Cir. 2000)………………...14

15
*National Cable & Telecommunications Association et al. v. Brand X Internet Services et al.*

    545 U.S. 967 (2005)………..………………………………………………...…7

16

17
*Wilson v. Kayo Oil Company dba Circle K #5250*

    2007 WL 3203035 (S.D.Cal.)…………………………………...…….11, 12, 13, 14

18
**State Statutes:**

19

20
Bus. and Prof. Code §17200……………………………………………………....8

21
Civ. Code §1770(a)(22)(A)...............................................................................................8

22
Code Civ. Proc. §391.1……………………………………………………2, 3, 16

23
Code Civ. Proc. §391(b)……………………………………………………3

24
Code Civ. Proc. §391(b)(1)……………………………………………………2

25
Code Civ. Proc. §391(b)(2)……………………………………………………2, 3

26

27
20

28

Code Civ. Proc. §391(b)(3)…….……………………………………………………………2, 3

Code Civ. Proc. §391(b)(4)…….……………………………………………………………2, 3

**Federal Statutes:**

47 U.S.C. § 227(b)(1)(A)(iii)……………………………………………………….....6, 8, 12

**Federal Communications Commission Rulings:**

FCC Report and Order 03-153, July 3, 2003 (CG Docket No. 02-278)…….……………………6

FCC Declaratory Ruling 07-232, January 4, 2008 (CG Docket No. 02-278)………………..…6

**Other Sources:**

The Rutter Group, Civil Procedure Before Trial § 7:12-7:15.10…………………………………5