1  MARIA C. ROBERTS, State Bar No. 137907
   mroberts@sheastokes.com
2  RONALD R. GIUSSO, State Bar No. 184483
   rgiusso@sheastokes.com
3  SHEA STOKES ROBERTS & WAGNER, ALC
   510 MARKET STREET, THIRD FLOOR
4  SAN DIEGO, CALIFORNIA 92101-7025
   TELEPHONE:    (619) 232-4261
5  FACSIMILE:    (619) 232-4840

6  Attorneys for HARRAH'S ENTERTAINMENT, INC. and *Specially Appearing* Defendants
   HARRAH'S OPERATING COMPANY, INC.; HARRAH'S MARKETING SERVICES
7  CORPORATION; HARRAH'S LAUGHLIN, INC.; HARRAH'S LICENSE COMPANY, LLC;
   and HBR REALTY COMPANY, INC.

8

9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13  JAMES M. KINDER,                          CASE NO.      07-CV-2132-DMS (AJB)
                                              [Consolidated with 07 CV 2226 DMS (POR)]
14          Plaintiff,
                                              Judge:        Hon. Dana M. Sabraw
15  vs.                                       Mag. Judge:   Hon. Anthony J. Battaglia

16  HARRAH'S ENTERTAINMENT, INC.;             Action Date:  October 2, 2007
    HARRAH'S OPERATING COMPANY, INC.;
17  HARRAH'S MARKETING SERVICES              REQUEST FOR JUDICIAL NOTICE IN
    CORPORATION; HARRAH'S LICENSE           SUPPORT OF HARRAH'S
18  COMPANY, LLC; HARRAH'S LAUGHLIN,         ENTERTAINMENT, INC.'S MOTION TO
    INC.; HBR REALTY COMPANY, INC. and       DECLARE PLAINTIFF A VEXATIOUS
19  DOES 1 through 100, inclusive,           LITIGANT AND FOR AN ORDER
                                              REQUIRING PLAINTIFF TO POST A
20          Defendants.                       BOND IN THE AMOUNT OF $75,000

21                                            Date:         April 25, 2008
                                              Time:         1:30 p.m.
22                                            Courtroom:    10

23  ///

24  ///

25  ///

26  ///

27  ///

28

1    HARRAH'S ENTERTAINMENT, INC. and *Specially Appearing* Defendants HARRAH'S

2  OPERATING COMPANY, INC.; HARRAH'S MARKETING SERVICES CORPORATION;

3  HARRAH'S LAUGHLIN, INC.; HARRAH'S LICENSE COMPANY, LLC; and HBR REALTY

4  COMPANY, INC. hereby request that the Court take judicial notice of the following matters

5  pursuant to F.R.E. 201:

6

7    1.    Declaration of Michael E. Kostrinsky filed in support of (1) *Specially Appearing*

8  Defendants Harrah's Operating Company, Inc. and Harrah's Marketing Services Corporation's

9  Motion to Dismiss Pursuant to F.R.Civ.P. Rule 12(b)(2),(6), and, (2) *Specially Appearing*

10  Defendants Harrah's Laughlin, Inc.; Harrah's License Company, LLC; and HBR Realty Company,

11  Inc.'s Motion to Dismiss Pursuant to F.R.Civ.P. Rule 12(b(2),(6), both of which are calendared for

12  the same date, April 25, 2008, a copy of which is attached hereto as Exhibit A.

13

14    2.    Order from the Court of Appeal, Fourth Appellate District Division One, State of

15  California, Case No. D004862. *The People v. James Michael Kinde*r, Dated September 1, 1987, a

16  copy of which is attached hereto as Exhibit B.

17

18    3.    The foreign authority of *Loshonkohl v. James M. Kinder*, 109 Cal.App.4[th] 510

19  (2003), a copy of which is attached hereto as Exhibit C.

                              SHEA STOKES ROBERTS & WAGNER, ALC

20

21

22  Dated:  April 18, 2008          By:   s/Ronald R. Giusso
                                          _____
23                                        Maria C. Roberts
                                          Ronald R. Giusso
24                                        Attorneys for HARRAH'S ENTERTAINMENT,
                                          INC. and *Specially Appearing* Defendants
25                                        HARRAH'S OPERATING COMPANY, INC.;
                                          HARRAH'S MARKETING SERVICES
26                                        CORPORATION; HARRAH'S LAUGHLIN,
                                          INC.; HARRAH'S LICENSE COMPANY, LLC;
27                                        and HBR REALTY COMPANY, INC.

28

EXHIBIT A

1 MARIA C. ROBERTS, State Bar No. 137907
mroberts@sheastokes.com
2 RONALD R. GIUSSO, State Bar No. 184483
rgiusso@sheastokes.com
3 SHEA STOKES ROBERTS & WAGNER, ALC
510 MARKET STREET, THIRD FLOOR
4 SAN DIEGO, CALIFORNIA 92101-7025
TELEPHONE:    (619) 232-4261
5 FACSIMILE:     (619) 232-4840

6 Attorneys for HARRAH'S ENTERTAINMENT, INC. and *Specially Appearing* Defendants
HARRAH'S OPERATING COMPANY, INC.; HARRAH'S MARKETING SERVICES
7 CORPORATION; HARRAH'S LAUGHLIN, INC.; HARRAH'S LICENSE COMPANY, LLC;
and HBR REALTY COMPANY, INC.

8

9                           UNITED STATES DISTRICT COURT

10                         SOUTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| 13  JAMES M. KINDER, | CASE NO. 07-CV-2132-DMS (AJB) [Consolidated with 07 CV 2226 DMS (POR)] |
| 14        Plaintiff, | |
| | Judge:        Hon. Dana M. Sabraw |
| 15  vs. | Mag. Judge:   Hon. Anthony J. Battaglia |
| 16  HARRAH'S ENTERTAINMENT, INC.; HARRAH'S OPERATING COMPANY, INC.; | DECLARATION OF MICHAEL E. KOSTRINSKY IN SUPPORT OF |
| 17  HARRAH'S MARKETING SERVICES CORPORATION; HARRAH'S LICENSE | *SPECIALLY APPEARING* DEFENDANTS' MOTION TO DISMISS PURSUANT TO |
| 18  COMPANY, LLC; HARRAH'S LAUGHLIN, INC.; HBR REALTY COMPANY, INC. and | F.R.CIV.P. RULE 12(b)(2), (6) |
| 19  DOES 1 through 100, inclusive, | ACCOMPANYING DOCUMENTS: NOTICE OF MOTION AND MOTION; |
| 20        Defendants. | MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF |
| 21 | MARIA C. ROBERTS; NOTICE OF LODGMENT OF EXHIBITS; [PROPOSED] ORDER |
| 22 | |
| 23 | Date:        April 25, 2008 |
| | Time:        1:30 p.m. |
| 24 | Courtroom:   10 |

25 / / /

26 / / /

27 / / /

28 / / /

I, Michael E. Kostrinsky, declare:

1.    I am the Chief Litigation Officer for Harrah's Operating Company, Inc. As such, I have personal knowledge of Harrah's Operating Company, Inc., its holdings, and those of its affiliates and Harrah's Entertainment, Inc. I make this declaration based on that knowledge.

2.    *Specially Appearing* Defendant Harrah's Entertainment, Inc. is a Delaware corporation, headquartered in Las Vegas, Nevada. It does not have offices in California; does not own property in California; does not have employees in California; and, does not conduct business in California. *Specially Appearing* Defendant Harrah's Entertainment, Inc. does not make telemarketing or other telephone calls to individuals in California using an automatic telephone dialing system, artificial or prerecorded voice, or otherwise.

3.    Harrah's Operating Company, Inc. is a Delaware corporation and is not headquartered in California. It does not have offices in California; does not own property in California; does not have employees in California; and, does not conduct business in California. Harrah's Marketing Services Corporation is a foreign corporation; is not headquartered in California; and does not own property in California. Harrah's License Company, LLC is a foreign company and is not headquartered in California. It does not have offices in California; does not own property in California; does not have employees in California; and, does not conduct business in California. Harrah's Laughlin, Inc. is a foreign corporation and is not headquartered in California. It does not have offices in California; does not own property in California; does not have employees in California; and, does not conduct business in California. And, HBR Realty Company, Inc. is a foreign corporation and is not headquartered in California. It does not have offices in California; does not own property in California; does not have employees in California; and, does not conduct business in California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this __11__ day of January 2008, at Las Vegas, Nevada.

Michael E. Kostrinsky

EXHIBIT B

F I L E D
Robert D. Zumwalt, Clerk
SEP 01 1987
BY JANICE KUYKENDALL

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

F I L E D
Keenan G. County, Clerk
MAY 26 1987
COURT OF APPEAL FOURTH DISTRICT

|  |  |  |
|---|---|---|
| THE PEOPLE, | ) |  |
| Plaintiff and Respondent, | ) |  |
| v. | ) |  |
| JAMES MICHAEL KINDER, | ) | D004862 |
| Defendant and Appellant. | ) | (Super. Ct. No. CR 78088) |

APPEAL from a judgment of the Superior Court of San Diego County, Barbara T. Gamer, Judge. Affirmed.

James Michael Kinder was convicted in a court trial of forgery (Pen. Code, § 470) and preparation of a false writing with the intent to produce it for fraudulent purpose (Pen. Code, § 134). The court suspended imposition of sentence and placed Kinder on five years' probation, the terms of which included serving six months in custody. Kinder appeals.

Kinder is an attorney. In October 1983, he hired a new attorney, Steven Murtough, to review and bring up to date

personal injury files. If Murtough had questions, Kinder would give him direction. In the course of reviewing the Patricia Bradley wrongful death file, Murtough noted nothing had been done on the case for over two years. He was concerned because of a code section permitting the defense to move for dismissal due to delay when there has been no action moving a plaintiff's case forward for two years. He told Kinder of his concern. In response to Murtough's concern, Kinder told him not to worry about the Bradley matter, that he had gotten Pat Bradley more money than she had ever seen or deserved. Murtough, out of curiousity, asked how this occurred. Kinder told him he married Pat to William after William was dead. Murtough asked him how this was done, and Kinder responded he was a licensed, ordained minister and there was a procedure with a certain type of marriage where the recording of the marriage is delayed. Murtough asked the questions because he did not understand, not in an effort to get more information regarding any possible liability. Kinder did not express any concern for his liability in the Bradley case.

On January 27, 1984, after terminating employment with Kinder, Murtough told Investigator Frank Reid of the district attorney's office about the above conversation. Reid began investigating.

In the course of the investigation, Reid learned Patricia Bradley had lived with William Bradley. William Bradley died

2

in a motorcycle accident on February 8, 1979. Patricia Bradley visited Kinder's office on February 10 or 11, 1979. Kinder told her he would sign papers so she and William could get married so she could collect insurance money. Patricia saw a piece of paper where appellant practiced signing William Bradley's name. Patricia signed the certificate and gave it to Kinder. At the time, the certificate did not have William's signature on it.

Kinder then used the certificate to obtain life insurance benefits for Patricia Bradley, as William's widow.

Kinder contends the communication between he and Murtough was privileged (attorney-client privilege) and its contents together with all evidence emanating from the communication is inadmissible. He argues, absent this evidence, there is no evidence he forged William Bradley's signature or uttered the fraudulent marriage certificate.

I

A client has a privilege to prevent disclosure of a confidential communication the client makes to his or her attorney. (Evid. Code, § 954.) For the purposes of the attorney-client privilege, a "client" is a person who consults a lawyer for the purpose of retaining the lawyer or securing legal services or advise from him in his professional capacity. (Evid. Code, § 951.)

3

Kinder notes three elements must be established for the attorney-client privilege to be applicable: one party to the communication must be a lawyer; the communication must be in confidence; and an attorney-client relationship must exist. The third requisite is at issue here. Kinder argues, because he hired Murtough to provide information after legal analysis of firm files, Kinder was a client using Murtough as an attorney. The problem with this argument is it is semantical, not based upon the facts before the court. Here, the record shows the relationship between Kinder and Murtough was employer-employee not attorney-client. While it is not uncommon for an individual or corporation to employ an attorney for the purpose of providing legal service or advice to the employer creating an attorney-client relationship, no evidence was presented here that Kinder ever consulted with Murtough as a client of Murtough. Rather, the communications involved review and advice on files on which Kinder was the attorney for a third-party client.

In regards to the specific communication at issue here, in the course of review of files, Murtough saw what he believed to be a possible problem with the Bradley file. He brought the problem to the attention of his employer. They had a brief discussion which led the employee, Murtough, to suspect criminal activity by his employer. The record fully supports

4

the trial court conclusion there was not an attorney-client relationship between Kinder and Murtough. Rather, there was an employer-employee or friend-to-friend relationship, the communications in neither being protected from disclosure. The trial court finding there was no attorney-client relationship between Kinder and Murtough is supported by substantial evidence.

II

Kinder also contends all communications between lawyers within the same firm respecting firm cases are within the attorney-client privilege. Kinder points out a group of attorneys working together is considered a single entity. He then argues communications between those persons regarding a client's case are privileged. Assuming Kinder is basically correct, the principle is inapplicable here because the attorney-client privilege belongs to the client. The client, Patricia Bradley, waived the privilege by testifying at the preliminary hearing.

The judgment is affirmed.

_____

BUTLER, J.

WE CONCUR:

_____

KREMER, P.J.

_____

WORK, J.

REPORT—INDETERMINATE SENTENCE
OTHER SENTENCE CHOICE

FORM CR 291

SUPERIOR COURT OF CALIFORNIA, COUNTY OF __SAN DIEGO__
BRANCH _____

COURT I.D.
37

PEOPLE OF THE STATE OF CALIFORNIA    versus    ☒ PRESENT    CASE NUMBER(s)   CR 78088 -A
DEFENDANT: JAMES MICHAEL KINDER    ☐ NOT PRESENT    -B
AKA:    -C

REPORT TO JUDICIAL COUNCIL OF: ☐ INDETERMINATE SENTENCE    -D
TO STATE PRISON ☒ SENTENCE CHOICE OTHER THAN STATE PRISON    -E

FILED
JUL 16 1986
BY ___ R. HENDERSON ___ DEPUTY

| (mo) (day) (yr) | DEPT. NO. | JUDGE | CLERK |
|---|---|---|---|
| 07/16/86 | 11 | BARBARA T. GAMER | ROBERTA T. HENDERSON |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. or PROBATION OFFICER |
|---|---|---|---|
| V. ANDERVORT | TOM STAHL | PETER HUGHES | S. LANGE |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES:

☐ ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO DAY YEAR | CONVICTION BY | ENHANCEMENTS (CHARGED AND FOUND) |
|---|---|---|---|---|---|---|---|
| 1 | PC | 470 | FORGERY | 79 | 06 09 86 | x | |
| 2 | PC | 134 | PREPARE FALSE EVIDENCE | 79 | 06 09 86 | x | |

2. A. Number of prior prison terms charged and found

| SECTION | NUMBER |
|---|---|
| 667.5(a) | 0 |
| 667.5(b) | 0 |
| 667.6(b) | 0 |

B. Number of prior felony convictions

| SECTION | NUMBER |
|---|---|
| 667.6(a) | 0 |

3. ☐ Defendant was sentenced to death on counts _____

4. ☐ Defendant was sentenced to State Prison:
   A ☐ For life, or a term such as 15 or 25 years to life, with possibility of parole, on counts _____
   B ☐ For life without the possibility of parole on counts _____
   C ☐ For other term prescribed by law on counts _____

5. ☐ Counts _____ were deemed misdemeanors.
   A ☐ Defendant sentenced to _____ days in county jail for all counts.

6. B. ☐ Defendant fined in sum of $ _____
   ☒ For counts __1__ __2__ _____, the defendant was placed on probation.
   A [1] ☐ Sentence pronounced and execution of sentence was suspended; or
     [2] ☒ Imposition of sentence was suspended.
   B. Conditions of probation included ☒ Jail Time __180__ days ☒ Fine

7. Other dispositions
   A ☐ Defendant was committed to California Youth Authority.
   B ☐ Proceedings suspended, and defendant was committed to California Rehabilitation Center.
   C ☐ Proceedings suspended, and defendant was committed as a Mentally Disordered Sex Offender.
   D ☐ Proceedings suspended, and defendant was committed as mentally incompetent.
   E ☐ Other (Specify) _____

NOTE: PURSUANT TO ARTICLE VI, SECTION 6 OF THE CALIFORNIA CONSTITUTION AND SECTION 68505 OF THE GOVERNMENT CODE, THE CHIEF JUSTICE REQUIRES THAT EACH SUPERIOR COURT SHALL COMPLETE THIS FORM FOR EACH INDETERMINATE SENTENCE TO STATE PRISON OR SENTENCE CHOICE OTHER THAN STATE PRISON. THE REPORTS IMPLEMENT SECTION 1170.4 OF THE PENAL CODE AND SHALL BE MAILED TO: ADMINISTRATIVE OFFICE OF THE COURTS, 350 McALLISTER, 3200 STATE BUILDING, SAN FRANCISCO, CALIFORNIA 94102

JUL 1 6 1986

REPORT—INDETERMINATE SENTENCE,
OTHER SENTENCE CHOICE

Const. Art. VI, §6
Pen C 1170.4, 1170.5

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO

The People of the State of California,
Plaintiff

vs.

JAMES MICHAEL KINDER
Defendant

**PROBATION ORDER**

S. LANGE rpf
CII:rA04 745 583
A-506 351

No. CR 78088

The defendant having heretofore, on __June 9,1986__ been convicted of the crime of __470 PC, Ct 1, 134 PC Forgery, Prepare False Evidence__ as charged and set forth in a (Indictment)(Accusation)(Information) entitled and numbered as above, filed in said Court by the District Attorney on __Jan 22, 1986__ and this being the time fixed for pronouncing judgment upon the defendant, the People appearing by __Jerry Stahl__ Deputy District Attorney, and the defendant appearing in person and by __Peter Hughes__ Attorney, and it appearing to the Court that the ends of justice will be served by placing said defendant upon probation;

IT IS THEREFORE NOW ORDERED by the Court that the (imposition) (execution) of sentence upon the defendant be and the same is hereby suspended for the term of __three years__ from the date hereof, during which time the defendant is committed to the charge and supervision of the Probation Officer of said County of San Diego and of this Court;

IT IS FURTHER ORDERED that said defendant wholly abstain from violating any of the laws of the United States, the State of California, and any of the ordinances of any municipality within this State; that defendant conduct self in all respects as a reputable and law-abiding citizen; that defendant not depart from the County of San Diego during said term of probation without the consent of the Probation Officer, nor depart permanently from the State of California without the consent in writing of the Superior Court of San Diego County.

That said defendant report to the Probation Officer at such times and in such manner as directed and follow such course of conduct as may be prescribed by the Probation Officer.

1. Be committed to the custody of the Sheriff for 180 ( ) days, with credit for 1 actual day served; Adult Institutions recommended; _stayed pending appeal_

2. Pay restitution of $6,000 ( ) to the Probation Officer through the Department of Revenue and Recovery at the rate of $500 ( ) or more per month with interest of 10% per annum on the principal amount remaining unsatisfied commencing on or before 60 days after release from custody for disbursement to the victim to be determined at a later date;

3. Pay a fine of $300 ( ), including penalty assessment, and restitution to the State Restitution Fund in the amount of $4,000 ( ) to be paid to the Probation Officer through Department of Revenue and Recovery at the rate of $500 ( ) or more per month, commencing upon the payment of restitution; said payment to be applied first to the fine until paid in full and thereafter to the State Restitution Fund;

4. Pay a restitution fine pursuant to 13967 Government Code, in the amount of $500 ( ); said fine to be stayed pursuant to 1202.4(b) PC with the stay to become permanent upon the successful completion of probation;

5. Seek and maintain full time employment, education, training or a combination thereof;

6. Violate no laws excepting minor traffic;

7. Report change of address and/or employment to the Probation Officer within 72 hours;

8. Report to Probation Officer within 72 hours of release from custody.

9. Comply and cooperate with any disciplinary action arising from this conviction by the State Bar;

10. Submit to and cooperate with any civil process or judgment arising from the court in this case.

11. _Probation to terminate after 3 yrs if restitution & fines are paid in full._

F I L E D
Robert D. Zumwalt, Clerk
JUL 1 6 1986
BY _____ DEPUTY
R. HENDERSON

You are hereby informed that:
Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, shall at any time thereafter be permitted by the Court to withdraw his plea of guilty and enter a plea of not guilty; or if he has been convicted after a plea of not guilty, the Court shall set aside the verdict of guilty and in either case the Court shall thereupon dismiss the accusation or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted.

Done in open Court.
ATTEST: A True Copy July 16, 1986

ROBERT ZUMWALT, Clerk

By _____
Deputy

_Barbara Gamer_
Judge of the Superior Court

257

1   Case No. CR 78088

2                 DECLARATION OF PERSONAL SERVICE

3       JOAN PRICE declares that:

4       On July 15, 1986, at approximately 3:30 p.m., I personally

5   served the MOTION TO STRIKE SUPPLEMENTAL MATERIALS AND

6   ATTACHMENTS THERETO SUBMITTED BY PROSECUTION on Thomas Stahl,

7   Deputy District Attorney, at the Office of the District Attorney

8   by delivering a copy thereof to the receptionist of that office,

9   located at 101 West Broadway, San Diego, California.

10      I certify under penalty of perjury the foregoing is true and

11  correct.   Executed in San Diego, California, this 15th day of

12  July, 1986.

13                                          _Joan K. Price_

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT C

Westlaw.

109 Cal.App.4th 510                                                                                               Page 1
109 Cal.App.4th 510, 135 Cal.Rptr.2d 114, 31 Media L. Rep. 1855, 03 Cal. Daily Op. Serv. 4805, 2003 Daily Journal D.A.R. 6056
**(Cite as: 109 Cal.App.4th 510, 135 Cal.Rptr.2d 114)**

**H**
Loshonkohl v. Kinder
Cal.App. 4 Dist.,2003.

Court of Appeal, Fourth District, Division 1, California.
Dona LOSHONKOHL, Plaintiff and Respondent,
v.
James M. KINDER, Defendant and Appellant.
**No. D039267.**

June 6, 2003.
Rehearing Denied July 2, 2003.
Review Denied Aug. 20, 2003.[FN*]

FN* Werdegar, J., dissented.
Certiorari Denied March 22, 2004.
See 124 S.Ct. 1679.

Police officer brought defamation action against citizen who filed multiple complaints, alleging that they were false, and made with spite, hatred, or ill will. The Superior Court, San Diego County, No. EC018809, William J. Howatt, Jr., J., held bench trial and entered judgment for officer. Citizen appealed. The Court of Appeal, McIntyre, J., held that statute making false and malicious complaints actionable was constitutional.

Affirmed.

West Headnotes

**[1] Constitutional Law 92 €=∞1562**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)3 Particular Issues and Applications in General
                92k1562 k. "Fighting Words". Most Cited Cases
    (Formerly 92k90.1(1))

**Constitutional Law 92 €=∞2161**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(X) Defamation
            92k2160 In General
                92k2161 k. In General. Most Cited Cases
    (Formerly 92k90.1(5))

**Constitutional Law 92 €=∞2190**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(Y) Sexual Expression
            92k2189 Obscenity in General
                92k2190 k. In General. Most Cited Cases
    (Formerly 92k90.4(1))
Although obscenity, fighting words, and defamation may be regulated, under the First Amendment, the government may not regulate within these categories based on content, in other words, based on disapproval of the ideas expressed. U.S.C.A. Const.Amend. 1.

**[2] Constitutional Law 92 €=∞1517**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)1 In General
                92k1516 Content-Based Regulations or Restrictions
                    92k1517 k. In General. Most Cited Cases
    (Formerly 92k90(3))
The rationale governing the proscription against content discrimination against speech is to prevent the government from driving certain ideas or viewpoints from the marketplace. U.S.C.A.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

109 Cal.App.4th 510                                                                                                   Page 2
109 Cal.App.4th 510, 135 Cal.Rptr.2d 114, 31 Media L. Rep. 1855, 03 Cal. Daily Op. Serv. 4805, 2003 Daily Journal D.A.R. 6056
(Cite as: 109 Cal.App.4th 510, 135 Cal.Rptr.2d 114)

Const.Amend. 1.

**[3] Constitutional Law 92 ☞2164**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(X) Defamation
            92k2160 In General
                92k2164 k. Public Employees and Officials. Most Cited Cases
    (Formerly 92k90.1(5))

**Libel and Slander 237 ☞1.5**

237 Libel and Slander
    237I Words and Acts Actionable, and Liability Therefor
        237k1.5 k. Constitutional and Statutory Provisions. Most Cited Cases
Statute allowing peace officers to bring defamation suits against citizens who bring complaints about officers that are knowingly false, and made with spite, hatred, or ill will is not improper content-based restriction on free speech; statute does not create a realistic possibility that official suppression of ideas is afoot. U.S.C.A. Const.Amend. 1; West's Ann.Cal.Civ.Code § 47.5.

**[4] Courts 106 ☞91(1)**

106 Courts
    106II Establishment, Organization, and Procedure
        106II(G) Rules of Decision
            106k88 Previous Decisions as Controlling or as Precedents
            106k91 Decisions of Higher Court or Court of Last Resort
                106k91(1) k. Highest Appellate Court. Most Cited Cases
As an intermediate appellate court, the Court of Appeal is bound by decisions of the California Supreme Court and must follow the reasoning found therein.

**115 *512 James M. Kinder, in pro. per. for De-

fendant and Appellant.
Daniel Patrick Tokaji, Los Angeles, Ben Wizner, Mark D. Rosenbaum and Jordan C. Budd for ACLU of Southern California and ACLU of San Diego and Imperial Counties as Amici Curiae on behalf of Defendant and Appellant.
Dan Zeidman, El Cajon, and Michelle Principato, for Plaintiff and Respondent.
McINTYRE, J.
The issue presented in this case is whether Civil Code section 47.5 (undesignated section references are to this code) is unconstitutional under the First Amendment as improper content-based discrimination. We answer this question in the negative and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant failed to designate a reporter's transcript of the trial; thus, our factual summary derives from the trial court's statement of decision.

Dona Loshonkohl, a veteran police officer with the City of San Diego Police Department (SDPD), was responsible for establishing good community relations as part of the SDPD's "Community Oriented Policing" program. Part of this program, called the "Problem Oriented Policy" (POP) program, focused on designing solutions to alleviate specific problems within a community.

James M. Kinder operates a car rental business, and several other businesses, from a location on India Street in San Diego. After a confrontation with Kinder on August 14, 1998, Loshonkohl obtained approval for a POP project to deal with problems near Kinder's businesses, including problems *513 with abandoned vehicles, parking, creating a neighborhood eyesore and code violations. The POP project focused on Kinder's businesses and at least six other businesses in the area. During the course of the POP project, Kinder aggressively confronted Loshonkohl on a number of occasions and by the project's conclusion, officers impounded and towed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

109 Cal.App.4th 510                                                                                                          Page 3
109 Cal.App.4th 510, 135 Cal.Rptr.2d 114, 31 Media L. Rep. 1855, 03 Cal. Daily Op. Serv. 4805, 2003 Daily Journal D.A.R. 6056
(Cite as: 109 Cal.App.4th 510, 135 Cal.Rptr.2d 114)

a total of 41 vehicles, 16 of which belonged to Kinder.

Kinder filed 20 complaints with the SDPD regarding Loshonkohl's actions, which he stated were for the purpose of "revenge." The SDPD individually reviewed, evaluated and investigated 18 complaints; two were treated as "inquiries" because Kinder refused to respond to questions about the complaints. Except where Kinder refused to cooperate, the complaints were determined to be "unfounded," "not sustained" or Loshonkohl was "exonerated."

**116 In September 1998, Loshonkohl filed a complaint against Kinder containing five separate causes of action for defamation under section 47.5. The trial court found section 47.5 constitutional on its face, and as applied, after considering the legislative history of section 47.5, the testimony of two SDPD sergeants and a number of exhibits containing statistical information regarding the number of unmeritorious citizen's complaints.

The trial court concluded that Kinder's "relentless challenge[s]" damaged Loshonkohl's reputation within the SDPD and caused her "grave and serious emotional injury," including loss of self-confidence and depression. Based on a consideration of Loshonkohl's past performance, longevity in the police force, education and skills, the trial court concluded that, as a result of the fallacious complaints and the resulting emotional toll, Loshonkohl was denied career opportunities, including positions as a field training officer, a detective, and a police department recruiter. Based on these findings, the court entered judgment in Loshonkohl's favor in the amount of $350,000.

Kinder filed a notice of appeal from the judgment. About four months later, he filed a motion to set aside the judgment based on a recent appellate court decision declaring section 47.5 unconstitutional on its face as violative of the right to free speech. (*Walker v. Kiousis* (2001) 93 Cal.App.4th 1432, 114 Cal.Rptr.2d 69(*Walker* ).) The trial court

denied the motion, concluding it lacked jurisdiction to set aside the judgment. Assuming arguendo that it had jurisdiction to change the judgment, the trial court found that the facts in *Walker* were distinguishable and concluded that the *Walker* court had incorrectly addressed the constitutional issue.

## *514 DISCUSSION

Section 47, subdivision (b) (section 47(b)), creates an absolute privilege from liability for a publication made in any legislative or judicial proceeding or "any other official proceeding authorized by law." Traditionally, section 47(b) protected citizens who complained about police misconduct from liability for their statements. However, section 47.5, which was enacted in 1982, creates an exception to the absolute privilege under section 47(b). (*Walker, supra,* 93 Cal.App.4th at p. 1440, 114 Cal.Rptr.2d 69, citing *Imig v. Ferrar* (1977) 70 Cal.App.3d 48, 54-57, 138 Cal.Rptr. 540.) It allows peace officers to bring defamation claims against those who file complaints against them for "misconduct, criminal conduct, or incompetence" with their employers if the complaint is knowingly false and made with "spite, hatred, or ill will." (§ 47.5.)

[1] While the First Amendment to the United States Constitution protects freedom of speech, the United States Supreme Court has recognized several categories of speech that can be regulated "because of their constitutionally proscribable content," including obscenity, fighting words and defamation. (*R.A.V. v. City of St. Paul, Minnesota* (1992) 505 U.S. 377, 383, 112 S.Ct. 2538, 120 L.Ed.2d 305(*R.A.V.*), italics omitted.) Although these categories of speech may be regulated, the government may not regulate *within* these categories based on content, in other words, based on disapproval of the ideas expressed. (*People v. Stanistreet* (2002) 29 Cal.4th 497, 507, 127 Cal.Rptr.2d 633, 58 P.3d 465(*Stanistreet* ).) As an often cited example of this principle, the government may ban libel because it is an unprotected category, but it may not discriminate based on content by banning only libel that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

109 Cal.App.4th 510                                                                                    Page 4
109 Cal.App.4th 510, 135 Cal.Rptr.2d 114, 31 Media L. Rep. 1855, 03 Cal. Daily Op. Serv. 4805, 2003 Daily Journal D.A.R. 6056
**(Cite as: 109 Cal.App.4th 510, 135 Cal.Rptr.2d 114)**

criticizes the government. (*R.A.V., supra,* 505 U.S. at p. 384, 112 S.Ct. 2538.)

**\*\*117** [2] The rationale governing the proscription against content discrimination is to prevent the government from "driv[ing] certain ideas or viewpoints from the marketplace." (*R.A.V., supra,* 505 U.S. at p. 387, 112 S.Ct. 2538, citations omitted.) Based on this rationale, the United States Supreme Court has identified three situations in which content discrimination does not threaten the expression of ideas (and is therefore constitutional): (1) situations where the basis for the discrimination "consists entirely of the very reason the entire class of speech at issue is proscribable"(*id.* at p. 388, 112 S.Ct. 2538); (2) situations where the discrimination is based on the " 'secondary effects' " of the speech and is " 'justified without reference to the content of the ... speech' " (*id.* at p. 389, 112 S.Ct. 2538, italics omitted); or (3) in other situations, "so long as the nature of the content **\*515** discrimination is such that there is no realistic possibility that official suppression of ideas is afoot"(*id.* at p. 390, 112 S.Ct. 2538).

The *Walker* court concluded that section 47.5 was content-based discrimination because it restricted "defamatory speech against one group of public officials, peace officers, while leaving intact the privilege under section 47 for defamatory speech against all other public officials." (*Walker, supra,* 93 Cal.App.4th at p. 1448, 114 Cal.Rptr.2d 69.) The court also noted that the statute discriminated based on viewpoint because it made actionable only defamatory complaints against peace officers, while leaving privileged defamatory statements made by a peace officer during a formal complaint proceeding. (*Id.* at p. 1449, 114 Cal.Rptr.2d 69.) The *Walker* court declared section 47.5 unconstitutional on its face, concluding that none of the exceptions articulated in *R.A.V.* applied. (*Walker, supra,* 93 Cal.App.4th at pp. 1450-1454, 1457, 114 Cal.Rptr.2d 69.)

After Division Two of this appellate district issued the *Walker* opinion, and during the pendency of this appeal, the California Supreme Court issued its decision in *Stanistreet.* In *Stanistreet,* the court addressed the constitutionality of Penal Code section 148.6, which makes it a misdemeanor to file a knowingly false allegation of misconduct against a peace officer. (*Stanistreet, supra,* 29 Cal.4th at p. 501, 127 Cal.Rptr.2d 633, 58 P.3d 465.) The Legislature enacted Penal Code section 148.6 in 1995 to fill a gap created after courts interpreted Penal Code section 148.5 as not applying to complaints by the public against peace officers. (*Stanistreet, supra,* 29 Cal.4th at pp. 502-503, 127 Cal.Rptr.2d 633, 58 P.3d 465; Pen.Code, § 148.5 [reporting commission of a crime to a peace officer knowing the report to be false is a misdemeanor].) The *Stanistreet* court expressly recognized that, in criminalizing knowingly false statements about peace officer misconduct (rather than the commission of a crime), Penal Code section 148.6 gives "protection" to peace officers that the Legislature has not given to others. (*Stanistreet, supra,* 29 Cal.4th at pp. 502-503, 127 Cal.Rptr.2d 633, 58 P.3d 465.)

After stating that Penal Code section 148.6 proscribes only constitutionally unprotected speech (knowingly false statements), the *Stanistreet* court acknowledged the statute could still be unconstitutional if it discriminates based on content. (*Stanistreet, supra,* 29 Cal.4th at pp. 506-508, 127 Cal.Rptr.2d 633, 58 P.3d 465.) "[C]ontent discrimination 'raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace'...."(*R.A.V., supra,* 505 U.S. at p. 387, 112 S.Ct. 2538, citing *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.* (1991) 502 U.S. 105, 116, 112 S.Ct. 501, 116 L.Ed.2d 476.) The court then applied **\*\*118** the three categories of permissible content discrimination identified in the *R.A.V.* court to determine whether Penal Code section 148.6 threatened to drive **\*516** certain ideas or viewpoints from the marketplace. (*Stanistreet, supra,* 29 Cal.4th at pp. 508-511, 127 Cal.Rptr.2d 633, 58 P.3d 465, three categories listed *ante.*) Although the *Stanistreet* court concluded that Penal Code section 148.6 falls

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

109 Cal.App.4th 510, 135 Cal.Rptr.2d 114, 31 Media L. Rep. 1855, 03 Cal. Daily Op. Serv. 4805, 2003 Daily Journal D.A.R. 6056
**(Cite as: 109 Cal.App.4th 510, 135 Cal.Rptr.2d 114)**

within all three categories (*Stanistreet, supra,* 29 Cal.4th. at p. 508, 127 Cal.Rptr.2d 633, 58 P.3d 465), we begin our discussion with the third *R.A.V.* exception, which applies where "the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." (*R.A.V., supra,* 505 U.S. at p. 390, 112 S.Ct. 2538.)

The *Stanistreet* court rejected the argument that formally filed complaints of peace officer misconduct are disfavored subjects, stating such complaints are actually favored. (*Stanistreet, supra,* 29 Cal.4th at p. 510, 127 Cal.Rptr.2d 633, 58 P.3d 465.) It also rejected the argument that Penal Code section 148.6 had a "chilling effect" on the exercise of the constitutional right to free speech, concluding that Penal Code section 148.6 created no realistic possibility of the official suppression of ideas because "[t]he Legislature is not suppressing all complaints of police misconduct, only knowingly false ones." (*Stanistreet, supra,* 29 Cal.4th at pp. 509-510, 127 Cal.Rptr.2d 633, 58 P.3d 465.) The court noted that extending Penal Code section 148.6 to all complaints of public employee misconduct would not reduce this perceived chilling effect and that the statute survived any constitutional challenge based on overbreadth because the scienter requirement protected those that honestly misperceived facts. (*Stanistreet, supra,* 29 Cal.4th at pp. 510-511, 127 Cal.Rptr.2d 633, 58 P.3d 465.)

[3] The question presented is whether the reasoning of *Stanistreet* applies to validate section 47.5. Because *Stanistreet* was decided after briefing in this case, we invited the parties to submit supplemental letter briefs discussing application of the *Stanistreet* reasoning to the present appeal. They have done so, and we have received and considered those submissions.

While the *Stanistreet* court expressly declined to render an opinion on the validity of section 47.5, we conclude, as discussed below, that the *Stanistreet* reasoning as to the third *R.A.V.* exception applies equally to section 47.5 and we affirm on this

ground. We therefore only briefly address the first and second *R.A.V.* exceptions and note that these exceptions arguably do not apply to section 47.5. The *Stanistreet* court validated Penal Code section 148.6 under the first and second *R.A.V.* exceptions, concluding that the "potential harm" of knowingly making false complaints against peace officers is greater than the potential harm of similar complaints against other public officials because the agencies accepting these complaints have a legal obligation to expend public resources to investigate, retain and report the findings. (*Stanistreet, supra,* 29 Cal.4th at pp. 508-509, 127 Cal.Rptr.2d 633, 58 P.3d 465.) The expenditure of \*517 public resources also constituted a "secondary effect" that justified Penal Code section 148.6 without regard to content. (*Stanistreet, supra,* 29 Cal.4th at p. 509, 127 Cal.Rptr.2d 633, 58 P.3d 465.) This rationale is inapposite to section 47.5, a statute designed to redress personal harm suffered by individual peace officers. Similarly, the "emotive impact of [defamatory] speech on its audience is not a 'secondary effect.' "(*Boos v. Barry* (1988) 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333.)

[4] As to the third *R.A.V.* exception, Kinder and amici curiae advance arguments\*\*119 similar to those rejected in *Stanistreet,* contending that section 47.5 impermissibly applies to only a group of victims and a realistic possibility exists that section 47.5 will suppress truthful citizen complaints. However, these arguments fail for the reasons articulated by the *Stanistreet* court. As an intermediate appellate court we are bound by decisions of our Supreme Court and we must follow the reasoning found therein. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

Section 47.5 makes actionable only formal complaints against peace officers based on knowingly false statements of fact, speech that is constitutionally unprotected. (*Stanistreet, supra,* 29 Cal.4th at p. 501, 127 Cal.Rptr.2d 633, 58 P.3d 465; *Garrison v. Louisiana* (1964) 379 U.S. 64, 72-73, 85 S.Ct.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

109 Cal.App.4th 510                                                                                                    Page 6
109 Cal.App.4th 510, 135 Cal.Rptr.2d 114, 31 Media L. Rep. 1855, 03 Cal. Daily Op. Serv. 4805, 2003 Daily Journal D.A.R. 6056
(Cite as: 109 Cal.App.4th 510, 135 Cal.Rptr.2d 114)

209, 13 L.Ed.2d 125.) The scienter requirement " 'protects witnesses who honestly misperceive facts. Those who knowingly give false information to police officers should be discouraged from doing so.' [Citation.]" (*Stanistreet, supra,* 29 Cal.4th at p. 511, 127 Cal.Rptr.2d 633, 58 P.3d 465.) Further, section 47.5 provides an additional safeguard not included in Penal Code section 148.6, that the speech must be made with "spite, hatred, or ill will." (§ 47.5.)This extra requirement exceeds the standards enunciated by the United States Supreme Court for the recovery of defamation damages by public officials. (*New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 [public official may recover for defamatory falsehood relating to official duties if statement is made with " 'actual malice'-that is, with knowledge that it was false or with reckless disregard of whether it was false or not."].) Thus, the potential for defamation liability under section 47.5 creates no realistic possibility of the official suppression of ideas because "[t]he Legislature is not suppressing all complaints of police misconduct, only knowingly false ones." (*Stanistreet, supra,* 29 Cal.4th at p. 509, 127 Cal.Rptr.2d 633, 58 P.3d 465.)

While Kinder correctly points out that section 47.5 gives peace officers a right to sue for defamation damages that is not afforded to other public *518 officials, this does not render the statute constitutionally infirm. As noted by the high court in *R.A.V.,* the underinclusiveness of a regulation restricting "totally proscribable speech" need not be justified by reference to a neutral basis "so long as the nature of the content discrimination is such that there is no realistic possibility that official suppression of ideas is afoot." (*R.A.V., supra,* 505 U.S. at p. 390, 112 S.Ct. 2538.) As discussed above, there is no realistic possibility that section 47.5 results in the official suppression of ideas.

While citizen complainants have not received the reciprocal right to sue peace officers for defamation committed against them during the investigation of

their complaints, this lack of reciprocity is not startling, nor does it render the statute unconstitutional. Citizen complainants are not similarly situated and there is no indication peace officer defamation of citizen complainants poses a problem. "The First Amendment does not require States to regulate for problems that do not exist." (*Burson v. Freeman* (1992) 504 U.S. 191, 207, 112 S.Ct. 1846, 119 L.Ed.2d 5.) It was entirely reasonable for the Legislature to make a policy judgment that only formal complaints against peace officers should be exempted from the absolute litigation privilege of section 47(b).

Moreover, it is important to realize that section 47.5 does not prohibit expression of ideas, political concepts or criticisms of peace officers, specifically or in general. **120 Section 47.5 only exempts a limited class of complainants-those individuals who, with spite, hatred or ill will, make knowingly false complaints against peace officers with the officer's employing agency-from the protections of the absolute litigation privilege (§ 47(b)). While it is true that a peace officer could falsely accuse the citizen complainant of a crime during investigation of the complaint and the complainant would have no right to sue for defamation (*Walker, supra,* 93 Cal.App.4th at p. 1449, 114 Cal.Rptr.2d 69),section 47.5 does not absolve peace officers from liability for defamation that otherwise does not fall under the section 47(b) privilege. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212, 266 Cal.Rptr. 638, 786 P.2d 365 ["privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."].) Under the reasoning of *Stanistreet,*section 47.5 is constitutional because it falls within the third category of permissible content discrimination identified in *R.A.V.*

Because we conclude section 47.5 is constitutional, we do not reach Loshonkohl's alternative argument that we can affirm the judgment under *519 com-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

109 Cal.App.4th 510                                                                 Page 7
109 Cal.App.4th 510, 135 Cal.Rptr.2d 114, 31 Media L. Rep. 1855, 03 Cal. Daily Op. Serv. 4805, 2003 Daily Journal D.A.R. 6056
**(Cite as: 109 Cal.App.4th 510, 135 Cal.Rptr.2d 114)**

mon law defamation without reliance on section 47.5 because Kinder abused the section 47 privilege, except to note that Loshonkohl did not assert a common law defamation theory in her complaint. Finally, we do not address Kinder's argument, raised for the first time in his reply brief, that the judgment must be reversed because the damage award was excessive as a matter of law since he did not preserve this issue by seeking a new trial based thereon. (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 918-919, 114 Cal.Rptr. 622, 523 P.2d 662.)

## DISPOSITION

The judgment is affirmed. Loshonkhol is to recover costs.

WE CONCUR: BENKE, Acting P.J., and McDONALD, J.
Cal.App. 4 Dist.,2003.
Loshonkohl v. Kinder
109 Cal.App.4th 510, 135 Cal.Rptr.2d 114, 31 Media L. Rep. 1855, 03 Cal. Daily Op. Serv. 4805, 2003 Daily Journal D.A.R. 6056

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.